UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **TAMMY OWENS,**<br><br>*Plaintiff*,<br>v.<br><br>**SUNUP FINANCIAL, LLC,**<br>**TOTAL LOAN SERVICES, LLC,**<br>*and* **CAPITAL COMMUNITY**<br>**BANK, INC.,**<br><br>*Defendants*. | Case Number:     8:24-cv-00432<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**COMES NOW** the Plaintiff, Tammy Owens ("Ms. Owens"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, SunUp Financial, LLC, *doing business as* Balance Credit ("SunUp"), Total Loan Services, LLC ("TLS"), and Capital Community Bank, Inc**.,** *doing business as* CC Connect ("CCB"), stating as follows:

**PRELIMINARY STATEMENT**

1.     This is an action brought by Ms. Owens against the Defendants for violations of the *Racketeer Influenced and Corrupt Organizations Act*, 18 U.S.C. § 1961, *et seq.* ("RICO"), the *Electronic Funds Transfer Act*, 15 U.S.C. § 1693, *et seq.* ("EFTA"), the *Florida Consumer Collection Practices Act*, § 559.55, Fla. Stat., *et seq.* ("FCCPA"), and Florida's *Civil Remedies for Criminal Practices Act*, § 772.101, Fla. Stat., *et seq.* ("CRCPA").

## JURISDICTION AND VENUE

2. Subject matter jurisdiction for Plaintiff's RICO and EFTA claims arises under 18 U.S.C. § 1965, 15 U.S.C. § 1693, and 28 U.S.C. § 1331, as RICO and the EFTA are federal statutes.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

4. The Defendants are subject to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat. and Fed. R. Civ. P. 4(k).

5. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2), because the acts complained of were committed and/ or caused by the Defendants within Polk County Florida, which is in the Middle District.

## PARTIES

### Ms. Owens

6. **Ms. Owens** is a natural person residing in the City of Lake Wales, Polk County, Florida,

7. Ms. Owens is a *Consumer* as defined by the FCCPA, § 559.55(8), Fla. Stat.

### SunUp

8. **SunUp** is a Delaware limited liability company with a principal business address of 306 W. Erie Street, Office 1, Suite 300, Chicago, IL 60654.

9. SunUp's Florida Registered Agent is CT Corporation System, 1200 S. Pine Island Road, Plantation, FL 33324.

## CCB

10. **CCB** is a Utah corporation with a principal business address of 3280 N University Ave., Provo, UT 84604.

11. CCB's Utah registered agent is Matthew Field, 3280 N University Ave., Provo, UT 84604.

## TLS

12. **TLS** is an Ohio limited liability company with a principal business address of 205 Sugar Camp Circle, Dayton, OH 45409.

13. TLS' Ohio registered agent is, CH&K Agent Services, 1 South Main St., Suite 1300, Dayton, OH 45402.

## FACTUAL ALLEGATIONS

13. On or about September 19, 2023, Ms. Owens obtained a *Balance Credit* loan from the Defendants in the amount of $1,405.25 (the "**Loan**"). **SEE PLAINTIFF'S EXHIBIT A.**

14. The annual simple interest rate on the Loan was over 223.99%. *Id.*

15. Ms. Owens is thus required to repay $3,442.25 for the $1,405.25 Loan, in less than one year. *Id.*

16. Ms. Owens obtained the loan from her home in Florida.

17. The proceeds from the loan were transferred into her checking account maintained in Florida.

18. In Florida, extensions of credit issued by SunUp are purportedly made through CCB, a small bank located in Provo, Utah.

19. However, as explained in more detail below, CCB had virtually no involvement in the underwriting or approval of Ms. Owens' Loan.

20. Likewise, CCB had no involvement in the billing, collection, or servicing of the Loan.

21. The money used to fund the loan SunUp made to Ms. Owens overwhelmingly came from SunUp, its subsidiaries, and/or its investors, and not to CCB.

22. SunUp and its related non-bank parent companies and subsidiaries were the entities which provided notices to Ms. Owens, such as agreements and billing statements.

23. SunUp holds all the documents pertaining to Ms. Owens' Loan.

24. SunUp, along with TLS, either directly or through its contractors, performs virtually all of the activities related to Balance Credit's lending business – including collection, servicing, payment, and remittance operations.

25. Ms. Owens used the proceeds from the Loan to make personal and household purchases.

26. Therefore, the alleged balance due on the Loan meets the definition of *Debt* under the FCCPA, § 559.55(6), Fla. Stat.

27. § 687.02(1), Fla. Stat. renders extensions of credit made at interest rates greater than 18% per year usurious.

28. § 687.071(3), Fla. Stat. renders an extension of credit made at an annual interest **rate** greater than 45% **a third-**degree felony.

29. § 687.071(7), Fla. Stat. renders an extension of credit with an annual interest rate exceeding 25%, and logically any debt stemming from such extension of credit, void and unenforceable.

30. Any person who willfully makes extensions of credit with annual interest rates exceeding 25% forfeits the right to collect payment for the extensions of credit because such extensions of credit are "void as against the public policy of the state as established by its Legislature." *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935).

31. Under Florida law, even the recovery of the principal balance on extensions of credit made with annual interest rates exceeding 25% is impermissible. *Rollins v. Odom*, 519 So. 2d 652, 656 (Fla. Dist. Ct. App. 1988).

32. The purpose of Florida's usury statutes is to protect the needy borrower by penalizing the unconscionable money lender. *Stubblefield v. Dunlap*, 148 Fla. 401, 4 So.2d 519 (1941); *see also Pushee v. Johnson*, 123 Fla. 305, 166 So. 847 (1936); *River Hills, Inc. v. Edwards*, 190 So.2d 415 (Fla. 2d DCA 1966).

33. Florida has taken usury one step further in the consumer loan context through the passing of the Consumer Finance Act, Chapter 516, Florida Statutes (the "Act").

34. The Act requires licensure and state oversight for lenders issuing loans to Florida consumers in the amount of $25,000 or less. § 516.02(1), Fla. Stat.

35. The Act further restricts the interest and fees which may be charged by a licensed consumer finance company.

36. § 516.02(c), Florida Statutes indicates that any loan which fails to comply with the Act is unenforceable in Florida *even if valid wherever made*.

37. Thus, Florida has made clear that in order to enforce a consumer loan against a Florida resident, a lender must be licensed in Florida and comply with the Consumer Finance Act.

38. Plaintiff's Loan charged annual interest rates exceeding 210%, more than 7x the rate permitted by the Act.

39. Neither SunUp, nor TLS are licensed as a Consumer Finance Company in Florida.

40. Neither SunUp, nor TLS could enforce the Loan against Ms. Owens, regardless of whether the Loan is otherwise valid, wherever else it may have been made.

41. The Loan charged more than 25% and more than double Florida's maximum prescribed interest rate of 18%, or 30% with a consumer finance license.

42. The Loan is thus an *Unlawful Debt* per § 772.102(2)(a)(3), Fla. Stat. and 18 U.S.C. § 1961(6).

43. Any amount repaid on an illegal, usurious debt deemed void *ab initio* by state law constitutes unjust enrichment, even if less than the original amount of the

loan. *See, e.g., Williams et al. vs. Big Picture Loans, LLC*, case 3:17-cv-461, E.D. Virginia, July 20, 2021.

### SunUp Engages in Rent-a-Bank Scheme with CCB

44. Balance Credit is owned by SunUp, which is a subsidiary of Braviant Holdings ("Braviant"), a Chicago-based "FinTech" firm which has attracted close to $100 million of investment.

45. Braviant is also a Managing Member of SunUp Financial, LLC.

46. The CEO of Braviant Holdings is Matt Martorello ("Martorello"), a businessman with a history involving several predatory lending schemes.

47. SunUp, doing business as Balance Credit, makes loans at interest rates between 100% and 700% annually – rates which constitute criminal usury in many states, including Florida.

48. In states which allow SunUp to charge triple-digit interest rates, SunUp makes loans in its own name.

49. However, in states which prohibit loansharking, including Florida, SunUp claims to "partner" with CCB.

50. Purportedly, CCB originates the loan.

51. However, CCB then immediately assigns the loan to Braviant, which then re-assigns it to SunUp.

52. Braviant and SunUp then "service" the loan in all ways.

53. At no point is CCB the true lender of the Balance Credit loans, nor is any capital belonging to CCB at risk.

54. "Rent-a-bank" schemes simply use a legal smoke screen so that predatory lenders like Braviant and SunUp can at least attempt to make loans to consumers in states which prohibit usury, including Florida, minimizing the danger of prosecution or the inability to collect interest by intercession of the National Bank Act, 12 U.S.C. § 85, as explained *infra*.

55. Pursuant to the National Bank Act, 12 U.S.C. § 85, a chartered bank can make loans in other states at interest rate limits imposed by its home state.

56. CCB is a chartered bank that can make loans at interest rates up to the maximum allowed by its home state of Utah.

57. Conveniently, Utah does not have a specifically defined interest rate limit for private parties.[1]

58. CCB rents its name and status as a state-chartered bank to SunUp, a non-bank entity.

59. Other than lending its name, CCB has virtually nothing to do with the loans and lines of credit that SunUp creates.

60. To underwrite the loan, SunUp and TLS obtained a copy of Ms. Owen's Clarity credit report.

61. Clarity's record of the inquiry includes the names of both TLS and SunUp as the names of the *creditors* obtaining the report:

---

[1] Utah Statutes simply prohibit unconscionable consumer lending, rendering such loans void. *See* UCA § 70C-7-106; *Sosa v. Paulos*, 924 P.2d 357, 359 (Utah 1996).

| Date/Time/Tracking # | Purpose | Type | Company |
|---|---|---|---|
| 9/19/2023 4:48:28 pm EDT tprb7k84j0 | Credit Application | Online Installment Loan | CCBank/TLS/SunUp |

62. By CCB claiming to be the *True Lender* of Ms. Owens' Loan, Balance Credit asserts its loans are exempt from Florida's criminal and civil statutes prohibiting usury.

63. Nonetheless, CCB is not the true lender of Ms. Owens' Loan.

64. CCB simply receives a guaranteed fee which is, upon information and belief, roughly 5% of the original amount of the loan, in exchange for renting its name and status as an FDIC-insured bank to SunUp.

65. CCB is paid the guaranteed fee irrespective of whether the consumer ever repays the loan.

66. SunUp also indemnifies CCB against any losses.

67. SunUp and its affiliates then acquire "servicing" rights for the loan immediately after the making of the loan.

68. Notably, consumers who are looking to obtain financing from SunUp must apply at www.BalanceCredit.com and not through CCB's own website.

69. SunUp, not CCB, has the predominant economic interest in loans made to consumers like Ms. Owens, and thus, SunUp is the true lender of Ms. Owens' Loan. *See Fulford v. Marlette Funding, LLC,* No. 17CV30376 and *Fulford v. Avant of Colorado, LLC*, No. 17CV30377 (Colo. Dist. Ct. Denver County Aug. 13, 2018); *see also, e.g.*, *State Bank v. Strong*, 651 F.3d 1241 (11th Cir. 2011); *Easter v. Am. W. Fin.,* 381 F.3d

948, 957 (9th Cir. 2004); *CFPB v. CashCall, Inc.,* No. CV 15-7522-JFW (RAOx), 2016 WL 4820635 (C.D. Cal. Aug. 31, 2016); *Penn v. Think Fin., Inc.*, No. 14-cv-7139, 2016 WL 183289 (E.D. Pa. Jan. 14, 2016); *Goleta Nat'l Bank v. Lingerfelt*, 211 F. Supp. 2d 711 (E.D. N.C. 2002); *CashCall, Inc. v. Morrisey*, No. 12-1274, 2014 WL 2404300 (W. Va. May 30, 2014) (memorandum decision); *Ubaldi v. SLM Corp.*, 852 F. Supp. 2d 1190 (N.D. Cal. 2012); and *Eul v. Transworld Sys.*, No. 15 C 7755, 2017 WL 1178537 (N.D. Ill. Mar. 30, 2017).

70. TLS acts as a collection agent and servicer for SunUp, and collects interest payments, and provides support and other services to the group enterprise.

71. Tradeline data reported to *Clarity Services, Inc.* ("Clarity"), a major credit reporting agency ("CRA"), includes Total's name "TLS", standing for Total Lending Services. **SEE PLAINTIFF'S EXHIBIT B.**

72. By reporting Ms. Owens' Loan to CRAs, the Defendants engaged in the collection of the Loan from Ms. Owens. *See, e.g., Edeh v. Midland Credit Management, Inc.*, 748 F. Supp. 2d 1030 (D. Minn. 2010) ("The Court has learned, through its work on countless FDCPA cases, that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver.")

73. CCB engages in similar "rent-a-bank" schemes with many other FinTech entities.

74. RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

75. In *Boyle v. United States*, the Supreme Court recognized that RICO's definition of enterprise was "obviously broad" and included an "association in fact" enterprise. 556 U.S. 938, 944 (2009).

76. Thus, an enterprise may be a legally recognized entity like a corporation or an "association in fact enterprise," *i.e.*, "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981); *Boyle*, 556 U.S. at 948 ("[A]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose.").

77. The CRCPA defines an enterprise "any individual, sole proprietorship, partnership, corporation, business trust, union chartered under the laws of this state, or other legal entity, or any unchartered union, association, or group of individuals associated in fact although not a legal entity; and the term includes illicit as well as licit enterprises and governmental, as well as other, entities." § 772.102(3), Fla. Stat.

78. Here, Defendants are an ***association in fact enterprise*** who are associated together for the common purpose of making, collecting, and profiting off illegal loans.

79. Therefore, Defendants meet the definition of *Enterprise* pursuant to 18 U.S.C. § 1961(4), and § 772.102(3), Fla. Stat.

80. Ms. Owens has suffered severe emotional distress as a result of the Defendants' attempts to collect an unenforceable debt.

81. Ms. Owens has paid money out of pocket towards an unenforceable loan.

82. Ms. Owens has hired the aforementioned law firm to represent her in this matter and has assigned her right to fees and costs to such firm.

## COUNT I
## DEFENDANTS' JOINT & SEVERAL VIOLATIONS OF RICO, 18 U.S.C § 1962(c)

83. Ms. Owens incorporates Paragraphs 1 – 82 as if fully restated herein.

84. The Defendants each associated with the enterprise and participated in the affairs of the enterprise, which existed for the purpose of collection of an unlawful debt.

85. The Defendants' participation in the enterprise caused Ms. Owens to repay a void Loan.

86. The Defendants utilized the internet, telephone, and/or mail to reach across state lines in the operation of the BalanceCredit.com platform, through credit reporting, emails to Ms. Owens, and transfers to and from her bank account. electronic mail.

87. Therefore, the Defendants violated 18 U.S.C § 1962(c).

**WHEREFORE,** Ms. Owens respectfully requests this Honorable Court enter judgment against Defendants, jointly and severally, for:

   a. Threefold the amount of actual damages;

   b. Reasonable costs and attorneys' fees pursuant to 18 U.S.C § 1964(c); and,

   c. Any other relief this Court deems equitable and proper under the circumstances.

## COUNT II
## DEFENDANTS' JOINT & SEVERAL VIOLATIONS OF RICO, 18 U.S.C § 1962(d)

88. Ms. Owens incorporates Paragraphs 1 – 82 as if fully restated herein.

89. The Defendants violated **18 U.S.C § 1962(d)** by conspiring with each other, and other persons, to issue and collect unlawful debts through the BalanceCredit.com lending platform, including the Loan.

90. The Defendants each acted in furtherance of this conspiracy when, at various times, they did the following:

    a. issued the Loan to Ms. Owens;

    b. initiated a deposit to Ms. Owens' bank account;

    c. initiated withdrawals from Ms. Owens' bank account;

    d. attempted collection of the credit lines through correspondence to Ms. Owens; and/or,

    e. claimed CCB ownership of the Loan to provide a guise of bank issuance.

91. The Defendants also each agreed to the overall objective of the conspiracy – to issue and collect unlawful loans through BalanceCredit.com.

92. The Defendants utilized the internet, telephone, and/or mail to reach across state lines in furtherance of their conspiracy.

93. Therefore, the Defendants violated 18 U.S.C § 1962(d).

**WHEREFORE,** Ms. Owens respectfully requests this Honorable Court enter judgment against Defendants, jointly and severally, for:

a. Threefold the amount of actual damages;

b. Reasonable costs and attorneys' fees pursuant to 18 U.S.C § 1964(c); and,

a. Any other relief this Court deems equitable and proper under the circumstances.

## COUNT III
## **DEFENDANTS' JOINT & SEVERAL VIOLATIONS OF THE FCCPA, § 559.72(9), FLA. STAT.**

94. Ms. Owens incorporates Paragraphs 1 – 82 as if fully restated herein.

95. The Loan is unenforceable in Florida, as it was made to a Florida resident, in Florida, and carried an interest rate exceeding 30% in violation of Florida's Consumer Finance Act, § 516.031, Fla. Stat.

96. The Defendants knew the annual interest on the Loan made to Ms. Owens exceeded Florida's maximum legal rate.

97. The Defendants' knowledge of the illegal nature of the Loan is evinced by the great lengths to which they have gone in an attempt to avoid Florida law by use of a "rent-a-bank" scheme.

98. The Defendants attempted, claimed, or threatened to enforce the unlawful Loan and/or asserted the legal right to enforce the unlawful Loan when they:

    a. attempted collection of the Loan via correspondence to Ms. Owens;

    b. attempted collection of the Loan via credit reporting; and,

   c. initiated ACH debits from Ms. Owens' checking account in an attempt to obtain payment.

99. The Defendants' collection and attempted collection falsely asserted that the Loan was legitimately owed, when it was not.

100. The Defendants' collection and attempted collection falsely asserted that they had a legal right to collect the Loan, which they did not.

101. The Defendants' actions were willful, intentional, and done for the express purpose of collecting an unenforceable debt from Ms. Owens and profiting from such collection.

102. Therefore, Defendants violated § 559.72(9), Fla. Stat.

**WHEREFORE,** Ms. Owens respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, ordering:

   a. Statutory damages of **$1,000.00** pursuant to § 559.77(2), Fla. Stat.;

   b. Actual damages pursuant to § 559.77(2), Fla. Stat.;

   c. Injunctive relief preventing the Defendants from attempting to collect the alleged balance from Ms. Owens pursuant to § 559.77(2), Fla. Stat.;

   d. Reasonable costs and attorney's fees pursuant to § 559.77(2), Fla. Stat.; and,

   e. Such other relief that this Court deems just and proper.

## COUNT IV
## DEFENDANTS' JOINT & SEVERAL VIOLATIONS OF THE CRCPA, § 772.103(3), FLA. STAT.

103. Ms. Owens incorporates Paragraphs 1 – 82 as if fully restated herein.

104. The Defendants each associated with the enterprise and participated in the affairs of the enterprise, directly or indirectly, for the purpose of the collection of unlawful debts.

105. The Defendants' participation in the enterprise caused Ms. Owens to repay the unenforceable Loan.

106. The Defendants received proceeds directly and indirectly from the collection of the Loan.

107. The Defendants associated with the enterprise and participated in the affairs of the enterprise, directly or indirectly, to collect on the Loan.

108. Therefore, Defendants violated § 772.103(3), Fla. Stat.

**WHEREFORE,** Ms. Owens respectfully requests this Honorable Court enter judgment against Defendants, jointly and severally, for:

a. Threefold the amount of actual damages, or the statutory minimum of $200, whichever is greater, pursuant to § 772.104(1), Fla. Stat.;

b. Reasonable costs and attorneys' fees pursuant to pursuant to § 772.104(1), Fla. Stat.; and,

c. Any other relief this Court deems equitable and proper under the circumstances.

## COUNT V
## DEFENDANTS' JOINT & SEVERAL VIOLATIONS OF THE CRCPA, § 772.103(4), FLA. STAT.

109. Ms. Owens incorporates Paragraphs 1 – 82 as if fully restated herein.

110. The Defendants conspired with each other, or other persons, to issue and collect unlawful debts, including the Loan.

111. The Defendants each acted in furtherance of this conspiracy when, at various times, they:

- a. issued the Loan to Ms. Owens;
- b. initiated a deposit to Ms. Owens' bank account;
- c. initiated withdrawals from Ms. Owens' bank account;
- d. attempted collection of the Loan through correspondence to Ms. Owens; and/or,
- e. claimed CCB ownership of the Loan to provide a guise of issuance from a bank.

112. As evidenced by their cooperation with one another, the Defendants each agreed to the overall objective of the conspiracy – to issue and collect unlawful loans.

113. Therefore, Defendants violated § 772.103(3), Fla. Stat.

**WHEREFORE,** Ms. Owens respectfully requests this Honorable Court enter judgment against Defendants, jointly and severally, for:

- a. Threefold the amount of actual damages, or the statutory minimum of $200, whichever is greater, pursuant to § 772.104(1), Fla. Stat.;

    b.    Reasonable costs and attorneys' fees pursuant to pursuant to § 772.104(1), Fla. Stat.; and,

    c.    Any other relief this Court deems equitable and proper under the circumstances.

## COUNT VI
## SUNUP & TLS' VIOLATIONS OF THE EFTA, 15 U.S.C. § 1693k(1)

114. Ms. Owens incorporates Paragraphs 1 – 82 as if fully stated herein.

115. SunUp and TLS violated **15 U.S.C. § 1693k(1),** either willfully and intentionally, or recklessly and without regard for a consumer's rights, when they conditioned the approval of a loan upon Ms. Owens "voluntarily" agreeing to electronic payments.

**WHEREFORE,** Ms. Owens respectfully requests this Honorable Court enter judgment against SunUp and TLS, jointly and severally, for:

    a.    Actual damages pursuant to 15 U.S.C. § 1693m(1);

    b.    Statutory damages of $1,000, and no less than $100, per incident, pursuant to 15 U.S.C. § 1693m(a)(2)(A);

    c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1693m(a)(3); and,

    d.    Any other relief this Court deems equitable and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Ms. Owens hereby demands a jury trial on all issues so triable.

Respectfully submitted this February 16, 2024, by:

          **SERAPH LEGAL, P. A.**

          */s/ Christian Cok*
          Christian E. Cok, Esq.
          Florida Bar No: 1032167
          2124 W. Kennedy Blvd., Suite A
          Tampa, FL 33606
          Tel: 813-567-1230
          Fax: 855-500-0705
          CCok@SeraphLegal.Com
          *Counsel for Plaintiff*

## ATTACHED EXHIBIT LIST

A.    Ms. Owens' Balance Credit Loan Agreement, September 19, 2023 – Excerpt
B.    CCB Tradeline from Ms. Owens' Clarity Disclosure, December 18, 2023 - Excerpt